UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

    Plaintiff,

v.                                      Case No.:   2:24-cv-943-SPC-NPM

SHERIFF BILL PRUMMELL and
DEPUTY CHRISTOPHER SCOTT
WILLIAMS, in their individual and
official capacities;

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are Sheriff Bill Prummell and Deputy Christopher Scott Williams' Motion to Dismiss (Doc. 22) and Plaintiff Andrew Bryant Sheets' Response (Doc. 34). For the below reasons, the Court grants the motion in part.

### Background

Plaintiff, proceeding without a lawyer, brings this action under 42 U.S.C. § 1983. (Doc. 15). In his amended complaint, he alleges as follows.[1] On October 20, 2020, he visited the Charlotte County Sheriff's Office to file an

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

internal affairs complaint while wearing a body camera. (Doc. 15 ¶¶ 10–12). His complaint included allegations that Sheriff Prummell had an extra-marital affair and that a SWAT team doctor was illegally distributing steroids. (*Id.* ¶ 12). After requesting to speak with someone from the internal affairs department, Plaintiff was met by Deputy Williams, who issued him a trespass warning. (*Id.* ¶¶ 12, 15). Plaintiff incessantly asked Deputy Williams the reason for the trespass warning, but Deputy Williams did not provide one. (*Id.* ¶¶ 15–17). Deputy Williams warned Plaintiff that failure to exit the building would result in his arrest. (*Id.* ¶ 18). Plaintiff then exited the building. (*Id.* ¶ 19).

The trespass warning cites Florida Statute § 810.09 as the reason for the issuance, includes prohibitions from visiting multiple Charlotte County Sheriff's Office locations for one year, and does not provide notice of the availability of an appeals process. (Doc. 15-1). A local news station released a statement from Sheriff Prummell saying that Plaintiff had "on a repeated basis . . . come into the various sheriff's office locations and berated, belittled, and cursed at [his] staff." (Doc. 15 ¶ 27). He stated that he sought to "protect [his] staff from [Plaintiff's] constant abuse." (*Id.*).

Plaintiff alleges other incidents of "viewpoint discrimination," including a 2018 Facebook incident where the Charlotte County Sheriff's Office hid his comments on their post. (*Id.* ¶ 30). Other allegations include a May 25, 2021,

incident where he was "[k]icked off the sidewalk during a 1st Amendment protest" and a November 14, 2022, incident where he was trespassed while directing profane and aggressive language toward a Charlotte County Sheriff's Office employee. (*Id.* ¶¶ 31, 34, 35).

Plaintiff sues Sheriff Prummell and Deputy Williams in their individual and official capacities under various § 1983 theories. In Claim One, Plaintiff alleges that his First Amendment rights were violated through viewpoint discrimination. (*Id.* at 11). In Claim Two, he alleges that the trespass warning issued by Deputy Williams was retaliation for exercising his First Amendment rights. (*Id.* at 11–12). Claim Three is a *Monell* claim for failure to train. (*Id.* at 12). Claim Four is a *Monell* claim for violation of procedural due process. (*Id.* at 13). And in Claim Five, Plaintiff alleges that the trespass warning was a prior restraint violating the First Amendment. (*Id.* at 14). Defendants move to dismiss. (Doc. 22 at 2–3).

**Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). If courts can draw reasonable inferences of a defendant's liability from the facts pled, then the claim is "facially plausible." *Iqbal*, 556 U.S. at 678.

3

"[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" are simply not enough. *Twombly*, 550 U.S. at 555.

## Analysis

The Court starts with the claims against Deputy Williams. Defendants argue that the claims against Deputy Williams in his official capacity are effectively claims against the governmental entity and should be dismissed because they are duplicative of the claims against Sheriff Prummell. (Doc. 22 at 5). "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Also of note, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory[,] rather they are only liable "when execution of a government's policy or custom . . . inflicts the injury[.] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978). Claims One, Two, and Five against Deputy Williams in his official capacity are thus dismissed, as the proper vehicle for those claims is a *Monell* claim—two of which have already been pled.

Defendants argue the Court should dismiss the individual-capacity claims against Deputy Williams as well. They raise the same two arguments against both Plaintiff's viewpoint-discrimination and retaliation claims, so the Court addresses them together.

4

"A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995)). A restriction on speech in a sheriff's office lobby "must be viewpoint neutral and reasonable in light of the purpose served by the forum." *Hoffman v. Delgado*, No. 23-13213, 2025 WL 25856, at *3 (11th Cir. Jan. 3, 2025). To state a First Amendment retaliation claim, on the other hand, Plaintiff "must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

Defendants argue that both the viewpoint-discrimination and retaliation claims fail because (1) Deputy Williams issued Plaintiff the trespass warning based on several incidents of harassment at the Sheriff's Office, not his internal affairs complaint; and (2) Plaintiff can still submit complaints by email, phone, and mail. (Doc. 22 at 11–13).[2]

---

[2] Defendants' argument about past incidents of harassment goes to Williams' rationale for issuing the trespass warning and the causal connection between the trespass warning and Plaintiff's internal affairs complaint. (Doc. 22 at 11–13). Defendants' argument about other ways to submit complaints goes to whether the trespass warning adversely affected Plaintiff's speech. (*Id.* at 13). Defendants do not assert any arguments about whether (1) Plaintiff's

5

The first argument fails.  Reading the amended complaint in light most favorable to Plaintiff, as the Court must at this stage, he has plausibly alleged that Deputy Williams issued the trespass warning because of his internal affairs complaint, not other incidents of harassment.  Plaintiff alleges that he politely requested to speak with someone from the internal affairs department.  (Doc. 15 ¶ 26).  Then Deputy Williams issued him a trespass warning because he did not agree with his viewpoint (that is, the critical nature of the internal affairs complaint).  (*Id.* ¶¶ 26, 41, 42).  Deputy Williams baldly cites Florida Statute § 810.09 on the trespass warning, providing no rationale for the warning.  (Doc. 15-1).  Plaintiff does not allege that any intervening events occurred between him requesting to speak to internal affairs and Deputy Williams issuing the trespass warning.  Given the sequence of events and lack of explanation for the trespass warning, the Court finds that Plaintiff's allegations support a reasonable inference that Deputy Williams issued the trespass warning because of and in retaliation against Plaintiff's viewpoint.

---

internal affairs complaint was constitutionally protected speech, (2) Plaintiff has alleged a viewpoint rather than merely the content of his speech, or (3) the trespass warning was reasonable.

The Court finds the internal affairs complaint is protected speech.  *See Bailey v. Wheeler*, 843 F.3d 473, 486 (11th Cir. 2016) (written complaint about inappropriate officer conduct was protected speech).  The Court finds that Plaintiff has alleged a viewpoint (a viewpoint critical to the Sheriff and SWAT team doctor).  And, as alleged, the trespass warning was not reasonable in light of the purpose served by the Sheriff's office lobby.  *See Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Sch.*, 118 F.4th 1324, 1332 (11th Cir. 2024) ("prohibited speech must be naturally incompatible with the purposes of the forum") (quotation omitted).

6

Defendants' second argument also fails. Defendants argue that Plaintiff's rights were not adversely affected because he can still submit complaints by email, phone, and mail. (Doc. 22 at 11–13). But their argument on this point is insufficient. They point to caselaw for the general proposition that Plaintiff's rights are adversely affected only if the defendant's conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254. But they provide no authority suggesting that the availability of other methods to submit a complaint defeats his claims. (Doc. 22 at 13). So Defendants fail to meet their burden.

In short, Plaintiff has sufficiently stated viewpoint discrimination and retaliation claims in Claims One and Two of his amended complaint.

Defendants also argue that Deputy Williams is entitled to qualified immunity. (*Id.* at 9). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (internal quotation marks and citation omitted). "When a court

concludes the defendant was engaged in a discretionary function, 'the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.'" *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).

Defendants argue Deputy Williams was acting within the scope of his discretionary authority when he issued the trespass warning. (Doc. 22 at 9). Plaintiff does not dispute this. (*See generally* Doc. 34). The Court finds that Deputy Williams was acting in his discretionary authority. *See Patrick v. McGuire*, No. 8:24-CV-999-MSS-NHA, 2024 WL 4803217, at *4 (M.D. Fla. Nov. 15, 2024) (officer acted within her discretionary authority when she told the plaintiff to leave a government office because of the office's policy against video recording). So the burden shifts to Plaintiff.

As to Plaintiff's viewpoint-discrimination and retaliation claims, he has met his burden to show that Deputy Williams is not entitled to qualified immunity, at least at this stage. Among other ways, a plaintiff may show that a right was clearly established by pointing to a "broader, clearly established principle that should control the novel facts of his situation." *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (cleaned up). Plaintiff appears to take this approach. (Doc. 34 at 4) (quoting *Moms for Liberty,* 118 F.4th at 1332).

The Court agrees that broad principles from Eleventh Circuit caselaw clearly establish that Deputy Williams' conduct—alleged as viewpoint

8

discrimination and retaliation—was unlawful. *See, e.g.*, *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1325 (11th Cir. 2024) ("[T]he law is clearly established that the state cannot engage in viewpoint discrimination—that is, the government cannot discriminate in access to the forum on the basis of the government's opposition to the speaker's viewpoint."); *Bennett*, 423 F.3d at 1256 ("[I]t is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights[.]"). This Court has already found a clearly established constitutional violation in a similar case involving a trespass warning in retaliation to a complaint. *See Harris v. Rambosk*, No. 2:18-CV-17-FTM-29MRM, 2018 WL 5085721, at *9 (M.D. Fla. Oct. 18, 2018) (citing *Bailey*, 843 F.3d at 485; *Bennett*, 423 F.3d at 1255–56). Claims One and Two against Deputy Williams in his individual capacity survive.

Plaintiff has not met his burden with respect to Claim Five, his prior-restraint claim against Deputy Williams. For this claim, Plaintiff also relies on broad principles, rather than caselaw with analogous facts. (Doc. 34 at 6–7). But he provides only two bare caselaw quotes, without explaining how these prior-restraint cases apply. (*Id.*). For this reason alone, Plaintiff has failed to meet his burden, and qualified immunity defeats this claim. *See Carruth*, 942 F.3d at 1062 (affirming a dismissal on qualified immunity grounds because the plaintiff "failed to offer any argument" on qualified immunity and thus did not meet his burden).

9

The lack of argument is particularly problematic because whether the trespass warning was an unlawful prior restraint is unclear. "Prior restraints contrast with subsequent punishments, which regulate a given type of speech by penalizing the speech only after it occurs." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017) (internal quotation omitted). Supreme Court "decisions have steadfastly preserved the distinction between prior restraints and subsequent punishments." *Alexander v. United States*, 509 U.S. 544, 553–54 (1993). The distinction "is critical to [the Supreme Court's] First Amendment jurisprudence." *Id.* at 554. As alleged, the trespass warning issued here was a subsequent punishment for Plaintiff's speech. Whether it was *also* a prior restraint due to its prospective one-year ban is anything but clearly established.

"[C]lassic examples" of a prior restraint include permitting and licensing ordinances. *Barrett*, 872 F.3d at 1223. A court-ordered injunction forbidding speech can also be a prior restraint. *Id.* The trespass warning here is none of these things. And Courts have considered cases involving similar one-year trespass warnings and found no prior restraint. *See, e.g.*, *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1126 (M.D. Fla. 2019) (holding that an ordinance prohibiting recording was not a prior restraint either facially or as applied to the plaintiff, even though enforcement of the ordinance resulted in a one-year trespass warning).

The only Eleventh Circuit opinion suggesting that a one-year trespass warning could be a prior restraint is *Wright v. City of St. Petersburg, Fla.*, 833 F.3d 1291, 1299 (11th Cir. 2016). But there, the court found the trespass warning was not a prior restraint because it "allowed [the plaintiff] to continue his expressive activities in other public areas" and "was not imposed on the basis of an advance determination that [the plaintiff's] expressive conduct was prohibited[.]" *Id.* at 1299 n.5 (citation omitted). Critical to that case, the trespass warning "had nothing to do with any expressive conduct at all," as it was issued because the plaintiff obstructed a police investigation and resisted arrest. *Id.*

This case is like *Wright* in some respects and different in others. On one hand, Plaintiff alleges that Deputy Williams issued the trespass warning because of his expressive conduct, making his claim stronger than the claim in *Wright*. On the other hand, like *Wright*, Plaintiff does not allege that Deputy Williams issued the trespass warning based on an advance determination that Plaintiff's future speech at the Sheriff's property would be prohibited. Nor can he. Plaintiff emphasizes that the trespass warning provided no rationale at all. The only reasonable inference supported by Plaintiff's allegations is that Deputy Williams issued the trespass warning because of Plaintiff's *past* speech—his attempt to submit an internal affairs complaint just moments earlier. And the extent to which Plaintiff can continue his expressive activities

11

in other public areas is unclear. He was banned from several Sheriff's properties for a year, although Defendants assert that he may submit complaints by other means. Given these competing considerations, how *Wright*'s holding may apply here is unclear. In other words, *Wright* did not clearly establish that the trespass warning issued here is a prior restraint.

In any event, Plaintiff does not cite *Wright* or explain how any other prior-restraint authorities apply. Plaintiff has failed to meet his burden. Given this failure and having reviewed the caselaw, the Court cannot say that the issuance of the trespass warning—framed as a prior restraint—violated clearly established constitutional rights of which a reasonable person would have known. As a result, qualified immunity shields Deputy Williams from that claim. The Court dismisses Claim Five.

Next, the Court addresses the claims against Sheriff Prummell. In Claim Three, Plaintiff brings a *Monell* claim asserting that Sheriff Prummell "through [his] procedure, policies, practices, and customs" has violated Plaintiff's rights through his "indifference and a failure to train" his employees properly on viewpoint discrimination. (Doc. 15 ¶¶ 56, 57). "To impose *Monell* liability, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333

12

(11th Cir. 2021) (internal citation omitted). "In limited circumstances, a local government's decision not to train certain employees to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (cleaned up and internal citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). Plaintiff's claim falls short.

Plaintiff fails to allege that Sheriff Prummell was on notice of his employees' viewpoint discrimination and deliberately chose not to act. Not only that, but Plaintiff's allegations of a pattern of conduct are insufficient. Plaintiff includes three instances in which he believes the Charlotte County Sheriff's Office discriminated against him because of his viewpoint. One instance was on Facebook where his comments were hidden on a Charlotte County Sheriff's Office post. (Doc. 15 ¶ 30). Another occurred on May 25, 2021, when Plaintiff was "[k]icked off the sidewalk during a 1st Amendment protest[.]" (*Id.* ¶ 31). And the final instance was on November 14, 2022, when

Plaintiff was trespassed while directing profane and aggressive language toward a Charlotte County Sheriff's Office employee filing an internal affairs complaint. (*Id.* ¶¶ 34, 35). The only instance that provides enough facts for the Court to even consider that viewpoint discrimination occurred is the Facebook incident where Plaintiff embeds a screenshot of his comments. (*Id.* ¶ 30). The others provide no context regarding Plaintiff's speech or viewpoint. (*Id.* ¶ 31–35). Even if the Facebook incident was viewpoint discrimination, once instance alone does not create a pattern. Thus, the Court dismisses Claim Three.

Claim Four against Sheriff Prummell is another *Monell* claim brought under the Fifth and Fourteenth Amendments' guarantees of procedural due process.³ (Doc. 15 at 13). Plaintiff alleges that Sheriff Prummell had a "policy of allowing its employees to trespass Andrew Sheets for First [A]mendment activities" and a policy of issuing trespass warnings that "provide[] no procedural means" for a recipient "to challenge the warning[.]" (*Id.* ¶¶ 65, 67–69).

Defendants argue the Court should dismiss this claim because a "single trespass warning" is not enough to sustain a claim for an alleged

---

³ Plaintiff cannot bring this claim under the Fifth Amendment because he is not challenging the actions of the federal government. *See Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law.").

14

unconstitutional policy or practice. (Doc. 22 at 19). Plaintiff responds by pointing out that he cites two trespass warnings in his amended complaint—the 2020 trespass warning after entering the Sheriff's office and a similar 2022 incident. (Doc. 15 ¶ 34; Doc. 15-1). Plaintiff does not allege whether the 2022 trespass warning (or any trespass warning other than the 2020 warning) provided the recipient with a procedural means to challenge the warning. Plaintiff also broadly alleges that Sheriff Prummell "uses trespass warnings" to stop his speech and has trespassed Plaintiff "multiple times." (Doc. 15 ¶¶ 62–63). But Plaintiff's conclusory allegations, coupled with only two examples, are insufficient to establish a policy or practice. *See Wakefield v. City of Pembroke Pines*, 269 F. App'x 936, 940 (11th Cir. 2008) ("Two incidents, occurring approximately thirteen months apart, are insufficient to establish a custom."). Thus, the Court dismisses Claim Four.

Finally, Defendants also contend that the individual-capacity claims against Sheriff Prummell should be dismissed because he did not have any participation in the allegedly unlawful conduct. (Doc. 22 at 6). The only claims brought against Sheriff Prummell in his individual capacity are *Monell* claims (Claims Three and Four). Since "*Monell* claims do not apply to claims against individuals[,]" Claims Three and Four are dismissed against Sheriff Prummell in his individual capacity. *Fountain v. City of Lakeland*, No. 8:11-CV-52-T-17TBM, 2011 WL 3703454, at *1 (M.D. Fla. Aug. 23, 2011); *Wilcox v. Andalusia*

*City Sch. Bd. of Educ.*, 660 F. Supp. 3d 1167, 1184 (M.D. Ala. 2023) (finding that a *Monell* claim is not cognizable against an official in their individual capacity).

Accordingly, it is

**ORDERED:**

Defendants' Motion to Dismiss (Doc. 22) is **GRANTED in part and DENIED in part**.

1. Claims One and Two are **DISMISSED with prejudice** against Deputy Williams in his official capacity only.

2. Claims Three and Four are **DISMISSED with prejudice** against Sheriff Prummell in his individual capacity only.

3. Claims Three and Four are **DISMISSED without prejudice** against Sheriff Prummell in his official capacity with leave to Amend.

4. Claim Five is **DISMISSED with prejudice**.

5. **On or before March 19, 2025**, Plaintiff may file a second-amended complaint to address the Court's holdings as to Claims Three and Four against Sheriff Prummell in his official capacity. **Failure to do so will cause the Court to deem those claims abandoned.**

**DONE** and **ORDERED** in Fort Myers, Florida on March 5, 2025.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

17